Matter of the Estate of CATHERINE PARIS, Deceased.

(Surrogate's Court, New York County, June, 1919.)

Domicile — transfer tax — non-residents — evidence — decedents' estates — when motion exempting transfer tax granted.

The intention to acquire a new domicile must be supplemented by the actual acquisition thereof.

Where decedent who, prior to 1913, had acquired a domicile in New Hampshire, described herself in her will as a resident of New York, where the will was admitted to probate, a decree of the Supreme Court of New Hampshire, to the effect that the

Surrogate's Court, New York County, June, 1919.    [Vol. 107.

decedent was domiciled in New Hampshire, is not binding upon this court on the hearing of a motion by a residuary legatee under the will for an order exempting decedent's estate from a transfer tax.

The "full faith and credit" clause of the Constitution of the United States does not preclude inquiry as to the jurisdiction of the court to make such a decree.

Where, however, the evidence discloses that decedent, in 1913, leased a room in a hotel in the city of New York, merely to enable her to claim a residence in this state, and thus evade the payment of what she considered unjust taxes in New Hampshire, it must be *held* that at the time of her death she was not a resident of the state of New York and the motion to declare her estate exempt from a transfer tax will be granted.

APPLICATION by a residuary legatee for an order exempting her estate from taxation.

Dean, Tracy & McBarron (Jabish Holmes, of counsel), for Lawyers' Title and Trust Company, executor, petitioner, and George Albert Guertin, Roman Catholic bishop of Manchester, residuary legatee, intervenor and petitioner.

John B. Gleason, for state comptroller.

FOWLER, S. This is an application by a residuary legatee under the will of the decedent for an order exempting her estate from taxation under the provisions of the Transfer Tax Law of this state. The claim for exemption is based upon the contention of the applicant that the decedent at the time of her death was not a resident of this state. The state comptroller opposes the application and contends that the decedent at the time of her death was domiciled in this state.

The facts upon which the surrogate is asked to determine the question of decedent's domicile are

stipulated by the parties to the proceedings but they do not show where the decedent was born, and therefore there is no proof of her domicile of origin. The record does not show where she resided prior to 1862, but in that year she and her husband lived at the Metropolitan Hotel in New York city. There is no proof that at that time they owned a home or residence in this state or in any other state. In 1867 or 1868 they went to Charlestown, N. H., and purchased a residence there. At that time the decedent's husband was engaged in business in this city, and he continued in business here for many years afterwards. They spent the summer of each year in Charlestown, and the fall, winter and spring in New York. They did not own a home in New York, but lived at hotels.

The decedent's husband died on September 2, 1891. The record does not show whether, at the time of his death, he had acquired a domicile in New Hampshire. After his death the decedent continued to reside at Charlestown, N. H., about half of each year, and during the other half she lived at hotels in various cities. She was assessed for personal taxes in Charlestown as a resident of New Hampshire, and continued to pay such taxes until 1913. From the time of her husband's death until 1913 she did not have any home except her residence at Charlestown, N. H. It is therefore clear that irrespective of whether her husband had acquired a domicile in New Hampshire prior to his death and independently of his domicile, she had her domicile in New Hampshire for many years between 1891, when her husband died, and 1913, when the change of domicile is alleged to have taken place.

In 1912 there was a change in the Tax Law of New Hampshire which materially increased the decedent's taxes, and in that year she said that she thought she would change her residence. In 1913 her taxes were

30

Surrogate's Court, New York County, June, 1919. [Vol. 107.

still further increased, and she then said that "that settled it; she would change to New York and take up her domicile in her old home." In September, 1913, she came to New York and consulted her attorney in relation to changing her domicile. Subsequently she hired a room in the Manhattan Hotel in this city for forty-five dollars a month. The room was located on the thirteenth floor, and was in a part of the hotel usually occupied by men. It was habitable, but did not have a bathroom or other toilet facilities. She did not go to the room, nor did she see it or use it for any purpose whatever. While staying at the hotel, and after she had rented the room at forty-five dollars a month, she engaged and occupied two other rooms, for which she paid fourteen dollars a day. She remained at the hotel about two weeks and then returned to Charlestown via Boston. At the time she rented the small room in the Manhattan Hotel she stated that she wished to establish a residence in New York city; she had the words " Charlestown, New Hampshire," erased from her trunk and the words " New York city " substituted therefor; she had most of her securities transferred from a bank in Manchester, N. H., to New York. She also made a new will in which she described herself as of New York city.

She remained in Charlestown during the winter of 1913–1914 and came to New York about the 6th of April, 1914. She remained here until the twenty-eighth of April and then left for Charlestown, intending to remain over in Boston for a few days. While in Boston she became ill and died there on the 2d of May, 1914.

During the many years of her residence at Charlestown she owned and maintained a large house there. The house was well and tastefully furnished; it was

fitted with all the conveniences of a comfortable home and kept open during the entire year. There was no change in this condition after she had expressed a desire to acquire a domicile in New York city; she did not remove any of the furniture or belongings from the house, and it was still kept open and ready for occupancy, and the servants retained there. After she had expressed her desire to change her domicile from New Hampshire to New York she did not acquire any residence in New York other than the small room which she had engaged at the Manhattan Hotel. She never brought any of her personal belongings to that room, and never used or occupied it for any purpose. Her will was admitted to probate in New York as the will of a resident. Subsequently an application was made by the executors to file in the Probate Court in New Hampshire an exemplified copy of the record of the probate proceeding in this court, and the application was denied upon the ground that the decedent was a resident of New Hampshire and not a resident of New York city. Upon appeal to the Superior Court of New Hampshire the Probate Court was reversed; but the Supreme Court reversed the decree of the Superior Court and affirmed the decree of the Probate Court, holding that the decedent was a resident of and domiciled in New Hampshire.

Exemplified copies of the proceedings in the New Hampshire courts have been submitted on this application. The decision of the New Hampshire courts, however, to the effect that the decedent was domiciled in New Hampshire is not binding on this court, as section 1 of article 4 of the United States Constitution, which provides that full faith and credit shall be given in each state to the judicial proceedings of every other state, does not prevent this court from inquiring whether the New Hampshire court had jurisdiction to

Surrogate's Court, New York County, June, 1919.   [Vol. 107.

make the finding or decree. *Tilt* v. *Kelsey*, 207 U. S.
43; *Matter of Horton*, 217 N. Y. 368. The decree of
the Supreme Court of New Hampshire was to the
effect that she was liable to assessment for personal
taxes as a resident of New Hampshire. If she was a
resident of New Hampshire the court had jurisdiction
to make the decree. But the finding of that court that
it had jurisdiction is not binding on this court.

The determination of the application made to this
court for the exemption of the estate of the decedent
from taxation in this state is dependent upon the find-
ing of the court on the controverted question of
domicile. This court has jurisdiction to determine
that question, and may do so independently of any
finding made by the New Hampshire courts.

From the facts already stated it is evident that the
decedent had acquired a domicile in New Hampshire
prior to 1913; therefore the only question is whether
her subsequently expressed intention to change her
domicile in New Hampshire and to acquire a domicile
in New York, coupled with the engaging of a room
in the Manhattan Hotel, is sufficient to warrant a find-
ing that she actually abandoned her New Hampshire
domicile and acquired one in New York. The inten-
tion to acquire a new domicile is not sufficient; it must
be supplemented by the actual acquisition of the new
domicile. *Matter of Newcomb*, 192 N. Y. 238; *Matter
of Horton*, 175 App. Div. 447. If the decedent really
intended to establish a home in New York city she did
nothing to effectuate that intention, as the room which
she engaged at the Manhattan Hotel, while habitable,
was not the kind of a room to which she was
accustomed or which she usually occupied while stay-
ing at that hotel. That she did not intend to use that
room as a home or residence is manifest from the fact
that while staying at the hotel she did not occupy that

room, but engaged and occupied other rooms.  It was not furnished by her as a home; it did not have the conveniences and facilities of the home to which she was accustomed, or even of the rooms which she temporarily occupied at hotels; and the most conclusive proof that she did not intend to make it her home is that she never used or occupied it.   While she engaged that room at the Manhattan Hotel and paid for it by the month, she still retained her home in Charlestown —a home fully furnished, equipped with all conveniences and cared for and attended to by servants who had been connected with it for a number of years.

But a declaration that is self-serving and not followed by acts in accordance with the declaration will not be regarded as conclusive, but will yield to the intent which the acts and conduct of the person clearly indicate. *Matter of Mesa y Hernandez,* 172 App. Div. 467; *Matter of Morgan,* 176 id. 909; *Matter of Harkness,* 183 id. 396; *Curtis* v. *Curtis,* 185 id. 391.   Notwithstanding the declared intention of the decedent to abandon her domicile in New Hampshire, she did nothing which would indicate that she desired to change the manner in which she had been living for years previously to November, 1913—she spent the winter of 1913–1914 at Charlestown and came to New York in the spring the same as she had been doing for years.   Her desire to abandon her domicile in New Hampshire was prompted by a feeling that she was being unjustly taxed there; and while the desire to evade unjust taxation may be sufficient justification for a change of domicile, it is not sufficient to effect the change unless the new domicile is actually acquired. Therefore it seems to me that the decedent did not actually intend to acquire a new home, a new residence or a new domicile in New York, and that she leased the room in the Manhattan Hotel merely for

the purpose of enabling her to claim a residence in New York and thus evade the payment of what she considered unjust taxes in New Hampshire.

I will therefore find that the decedent did not acquire a new domicile in New York, and that at the time of her death she was not a resident of this state. The motion to declare the estate exempt is therefore granted.

Motion granted.