Bergan, J.
The Duke and Duchess of Arion were nationals and domiciliaries of Spain. Neither of them had ever been in New York, but through a long period of political uncertainty in Spain, from 1919 to the end of the Civil War, they sent cash and securities to New York for safekeeping and investment.
Under the law of Spain this was the community property of the spouses. Substantial parts of it were placed with the New York custodians in joint accounts. In establishing or in continuing these accounts, the husband and wife either expressly agreed in writing that the New York law of survivorship would apply or agreed to a written form of survivorship account conformable to New York law.
The husband died in November, 1957; the wife in March, 1959. After the husband’s death the wife took control of the property in New York and undertook to dispose of it by a will executed according to New York law and affecting property in New York *172 (Decedent Estate Law, § 47). Some additional property in joint account in England was transferred by the wife to New York after the husband’s death which had not been placed by either spouse in New York during the husband’s life.
This action is by plaintiff as an ancillary administrator in New York of the husband against defendant as executor of the wife’s will to establish a claim of title to one half of the property which at the time of the husband’s death was held in custody accounts under sole or joint names of the spouses by banks in New York and London.
The total value of the property in New York is about $2,275,000, of which about $370,000 was transferred by the wife after the husband’s death from the London accounts to New York. Plaintiff also seeks an accounting and damages for conversion.
The main issue in the case is whether the law of Spain should be applied to the property placed in New York during the lives of the spouses, in which event only half of the property would have gone to the wife at her husband’s death, or the law of New York, in which event all of such jointly held property would have gone to her as survivor. (Banking Law, § 134, former subd. 3.)
The banks which were custodians of the property are protected from liability, of course, by the form of survivorship agreement in making the transfer of the jointly held property in their custody to the wife (Banking Law, § 134, former subd. 3). The controversy here is not with the custodians, but between the representatives of the owners of the property, and is to be governed by the legal capacity of the husband and wife, as citizens and domieiliaries of Spain, to make an agreement as to their community property inconsistent with Spanish law.
The agreements giving full title to the survivor in the joint accounts were executed either in Spain, or if not there at least not in New York, and were, in any event, executed by persons who were domieiliaries and citizens of Spain. Usually rights flowing from this kind of legal act are governed by the law of the domiciliary jurisdiction (Matter of Mesa y Hernandez, 172 App. Div. 467, affd. 219 N. Y. 566; Matter of Majot, 199 N. Y. 29, 32; Hendricks v. Isaacs, 46 Hun 239).
It is abundantly established in the record that the law of Spain would have prevented either spouse in the circumstances *173 shown here from agreeing that community property go entirely to the survivor on the death of either; but half would go to the survivor and at least two thirds of the remaining half would pass to the heirs of the deceased spouse.
Dispositions of property in violation of this prohibition are shown to be void according to Spanish law. It is provided that all the assets of a marriage shall be deemed to be community property until it is proved they belong privately to either (Spanish Civ. Code, art. 1407). A gift from one to the other, except minor personal gifts, is void and the spouses are without capacity to renounce by contract or otherwise their rights and obligations concerning community property (arts. 1334, 1394).
But New York has the right to say as a matter of public policy whether it will apply its own rules to property in New York of foreigners who choose to place it here for custody or investment, and to honor or not the formal agreements or suggestions of such owners by which New York law would apply to the property they place here. (Cf. Decedent Estate Law, § 47; Personal Property Law, § 12-a.)
It seems preferable that as to property which foreign owners are able to get here physically, and concerning which they request New York law to apply to their respective rights, when it actually gets here, that we should recognize their physical and legal submission of the property to our laws, even though under the laws of their own country a different method of fixing such rights would be pursued.
Thus we would at once honor their intentional resort to the protection of our laws and their recognition of the general stability of our Government which may well be deemed inter-related things.
Such a law conflicts choice seems to be suggested by Hutchison v. Ross (262 N. Y. 381 [1933]) although there are some differences between that case and this. There a husband who, with his wife, was domiciled in Quebec, established a trust of personal property for the benefit of the wife in New York with a New York trustee and with the expressed intention the trust should be governed by New York law.
Its validity was determined according to New York law even though by the law of Quebec it would have been decided differently. Of course, the New York trustee had there acquired legal *174 title of the property and here the banks were mere bailees in relation to the property in their possession.
Still the case suggests a direction to our present public policy and, in the course of an examination of great depth into the conflicts problem, Judge Lehmah noted: “ Physical presence in one jurisdiction is a fact, the maxim [mobilia sequuntur personam] is only a juristic formula which cannot destroy the fact. * * * When the owner of personal property authorizes its removal from his domicile or acquires property elsewhere, he must be deemed to know that his property comes under the protection of, and subject to the laws of the jurisdiction to which it has been removed, and that appeal may be made to the courts of that jurisdiction for the determination of conflicting rights in •such property ” (supra, pp. 388-389).
The Special Term in the case before us found for the defendant largely on the basis of Boss and the Appellate Division affirmed without opinion. We agree that this disposition is the correct one as to property placed in New York during the husband’s lifetime.
This effect would include, too, those accounts which had formerly been joint accounts but which during the lifetime of the husband were transferred to the wife’s sole name. One of these, for example, was a joint account in the Guaranty Trust Company which in 1936 was transferred to a new account in the wife’s name. There were additional assets in this bank in the sole name of the wife which had not been in joint account and Which were recognized by the husband as her separate property.
The assent of the husband to arrangements in respect of joint property transferred to the sole account of the wife with the legal consequence of sole ownership to be anticipated from the effect of New York law would lead us to treat the property as the property of the wife and to be controlled by the same principle applicable to joint accounts (cf. Walsh v. Keenan, 293 N. Y. 573).
We would treat the wife’s own separate property similarly where, during the lifetime of her husband and apparently with his recognition and assent, she was able to transfer the separate property to New York and keep it here in her own name.
But the property in the value of about $370,000 transferred from London to New York by the wife after the husband’s death *175 raises a. somewhat different question. Adjudication of its title requires further factual exploration. At the time of the husband’s death this property and other property were held in three-name custody accounts by London depositories. The accounts were in the names of the husband, the wife and their daughter Hilda, who had no proprietary interest.
One of the accounts, it is asserted, was a “ safe custody account ” opened under simple letters of instruction. The other accounts seem not to have been governed by any formal documents.
The reasons grounded on New York policy and affected by the physical transfer of the property to New York during the lifetime of the spouses and by their directions relating to it do not necessarily apply to property of Spanish nationals placed in a third country during their lifetime.
If the local law of the third country would deem title to have passed to the wife on the death of the husband, we would treat this property as we now treat that placed in New York during their lives.
But if the third country would have applied the Spanish community property law or, if it is not demonstrated what rule would be applied by the third country and the subject is open or equivocal, we would, under general principles, feel bound to apply the law of Spain to the title of property owned by these Spanish nationals.
The facts necessary to decide this question were not resolved at Special Term, largely because this was not an issue on which attention was focused at trial. One question for resolution would be the precise form of instruction or agreement pursuant to which the property was placed in custody accounts in London ; the other question would be how, on those facts as found, the title would be regarded in English law. If upon such further inquiry it be found the wife did not succeed to full title to the property in London an accounting for the portion not belonging to her would be indicated.
The order should be modified to direct the remission to Special Term to determine the rights of parties in respect of the property transferred by the wife from London to New York after the husband’s death in accordance with this opinion and, as modified, affirmed, without costs.