ALEJANDRO ZAFFARONI, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LYDA ZAFFARONI, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9279-72, 9280-72.     Filed February 17, 1976.

983

*Benjamin C. O'Sullivan,* for the petitioners.
*James Silhasek,* for the respondent.

OPINION

Section 871 prescribes detailed rules on the taxation of nonresident aliens. During 1958 through 1961 (prior to the effective date of the Foreign Investors Tax Act of 1966, Pub. L. 89-809, 80 Stat. 1539), the section contained three provisions which are pertinent to this controversy. Section 871(a)(1)[2] imposed a tax of 30 percent, in lieu of the section 1 tax, on the amount received as salaries from United States sources by every nonresident alien individual not engaged in trade or business in this country. Section 871(a)(2)(A)[3] taxed the United States source net capital gains of nonresident aliens in this country less than 90 days only if they were in this country when the sales or exchanges producing the gains were effected. Section 871(c)[4]

---

[2] SEC. 871. TAX ON NONRESIDENT ALIEN INDIVIDUALS.

(a) No UNITED STATES BUSINESS—30 PERCENT TAX.—

(1) IMPOSITION OF·TAX.—Except as otherwise provided in subsection (b) there is hereby imposed for each taxable year, in lieu of the tax imposed by section 1, on the amount received, by every nonresident alien individual not engaged in trade or business within the United States, from sources within the United States, as * * * salaries, * * * a tax of 30 percent of such amount.

[3] Sec. 871(a)(2)(A) provides as follows:.

(2) CAPITAL GAINS OF ALIENS TEMPORARILY PRESENT IN THE UNITED STATES.—In the case of a nonresident alien individual not engaged in trade or business in the United States, there is hereby imposed for each taxable year, in addition to the tax imposed by paragraph (1)—

(A) if he is present in the United States for a period or periods aggregating less than 90 days during such taxable year—a tax of 30 percent of the amount by which his gains, derived from sources within the United States, from sales or exchanges of capital assets effected during his presence in the United States exceed his losses, allocable to sources within the United States, from such sales or exchanges effected during such presence; * * *

[4] Sec. 871(c) provides as follows:

(c) UNITED STATES BUSINESS.—A nonresident alien individual engaged in trade or business within the United States shall be taxable without regard to subsection (a). For purposes of * * * this section, * * * the term "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services—

(1) for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, or

(2) for an office or place of business maintained by a domestic corporation in a foreign country or in a possession of the United States,

by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of 90 days during the taxable year and whose compensation for such services does not exceed in the aggregate $3,000. Such term does not include the effecting, through a resident broker, commission agent, or custodian, of transactions in the United States in stocks or securities, or in commodities (if of a kind customarily dealt in on an organized commodity exchange, if the transaction is of the kind customarily consummated at such place, and if the alien, partnership, or corporation has no office or place

imposed a tax on all United States source income, including salaries and capital gains, of every nonresident alien individual engaged in "trade or business" (defined to include the performance of personal services) in this country whose compensation amounted to at least $3,000 during the taxable year.

Alejandro concedes that he was engaged in trade or business and consequently was taxable upon one-half of his salary and capital gains from United States sources pursuant to section 871(c). On the theory that such income was community property, however, he contends that one-half of it belonged to Lyda, his wife, and therefore is not taxable to him. Lyda concedes that she is taxable upon one-half of the salary income as her community share, sec. 871(a)(1), but denies liability for any tax on the capital gains derived from Alejandro's stock sales, because she was never present in the United States during the years in issue. See sec. 871(a)(2)(A); cf. sec. 871(c).

Respondent has taken alternative positions: (1) All the income, both the salary and the capital gains, is taxable to Alejandro, and (2) if Alejandro is not taxable on the full amount, one-half thereof, including the capital gains, is taxable to Lyda pursuant to section 871(c).

The first issue to be resolved, therefore, is whether Alejandro's salary and capital gains were the community income of the Zaffaronis. Assuming that question is answered affirmatively, we must then decide whether Lyda is taxable under section 871(a)(1) or 871(c) on the salary income and whether she can be taxed on her community share of the capital gain even though she was not present in the United States at any time during the years in controversy.

## Issue 1. Community Property Income

The stipulations of fact state that: "In 1951, * * * [the Zaffaronis] established residence in the Federal District of Mexico, where they continued to reside until 1962." The parties have interpreted this stipulation to mean the Zaffaronis were domiciled in Mexico during that period. Since the interests of one spouse in movables acquired by the other during marriage are, in the absence of an agreement between the parties, usually

of business in the United States at any time during the taxable year through which or by the direction of which such transactions in commodities are effected).

determined by the law of the domicile of the parties when the movables are acquired, Restatement 2d, Conflict of Laws, sec. 258 (1969), we turn to the law of Mexico to ascertain the ownership of Alejandro's salary income and the gain derived from the sale of the stock acquired with his earnings and, as we shall discuss, that law leads us to the law of Uruguay.

The parties have stipulated copies of pertinent provisions of the Civil Code of Mexico and the Civil Code of Uruguay together with English translations thereof. In addition, petitioners have supplied us with translations of certain Mexican court decisions and have presented the testimony of experts in Mexican and Uruguayan law. Based on our consideration of these materials and our independent research,[5] we have concluded that both Alejandro's salary and the capital gains from his stock sales were community income.

For Mexican citizens marrying in Mexico, article 178 of the Civil Code of Mexico states: "The marriage contract shall be made under the system of marriage community, or under that of separation of property." However, the parties appear to agree to the correctness of the testimony of the Mexican law expert that this article does not apply to non-Mexican citizens whose marriage takes place outside of Mexico, that the Civil Code of Mexico does not deal with the property of the parties to such marriages, and that the property ownership of such persons is governed by the doctrine of the so-called "Estatuto Personal." Under that doctrine, Mexico would look to the laws of Uruguay to determine the property regime to which the Zaffaronis were subject and would apply the law of Uruguay to the extent it is not inconsistent with Mexican law.

As stated in our Findings, Alejandro and Lyda were married in Uruguay in 1946 while domiciled in that country. Although they made no express agreement with respect to any system or regime of property ownership when they were married, the law of Uruguay implies an agreement that their marital property shall be community property.[6]

---

[5] Under Rule 146, Tax Court Rules of Practice and Procedure, the determination of foreign law is a question of law. See also rule 44.1 of the Federal Rules of Civil Procedure.

[6] Art. 130, Civil Code of Uruguay, provides as follows:

By the fact of marriage, community of property is contracted between the spouses, and the husband takes over the administration of that property of the wife, in accordance with the rule set forth in the title "Of The Conjugal Community And Of The Dowries."

Article 1955 [7] of the Civil Code of Uruguay defines community property ("ganancial property") to include property obtained by the employment of either spouse (e.g., Alejandro's salary), property acquired "at the expense of the common assets" (e.g., stock purchased with Alejandro's earnings), and the increase in the value of common property (e.g., the gains on the sales of such stock). The wife's share in the community property is a vested interest and not a mere expectancy.[8] As we read article 2397,[9] Civil Code of Uruguay, and as the expert witness interprets it, that article contemplates that all relations of property between the husband and wife are determined by the law of the first matrimonial domicile unless prohibited by the laws of the place where the property is located. This exception apparently relates only to real property, but, even if it also covers personal property, there appears to be no New York public policy that would deny the effect of a community property regime to nonresident aliens such as the Zaffaronis.[10] See, e.g., *In re Mesa's Estate,* 172 App. Div. 467, 159 N.Y.S. 59 (1st Dept. 1916), affd. per curiam 219 N.Y. 566, 114 N.E. 1069 (1916). Accordingly, Alejandro's salary

---

[7] Art. 1955, Civil Code of Uruguay, is as follows:

Ganancial property is:

1. That acquired for a consideration during the marriage at the expense of the common assets, whether the acquisition is made for the community or for only one of the spouses.

2. That obtained by the industry, profession, employment, office, or position of the spouses or of either spouse.
* * *
4. The fruits, income, or interests collected or accrued during the marriage, whether coming from the common property or from the property of either spouse.
* * *
6. The increase in value of either spouse's own property through advances from the community or through the industry of the husband or wife.

[8] Arts. 1985 and 1988, Civil Code of Uruguay, are as follows:

*Article 1985.* During the union of husband and wife only the wife, and not the husband, shall have the right to request separation of the property of each and of that acquired up to that time.
* * *
*Article 1988.* The wife shall have the right to request separation of property only when the incompetent administration of the husband puts her in danger of losing her own property or when there has been a creditors' meeting.

[9] Art. 2397, Civil Code of Uruguay, as amended by Law 10084 of Dec. 3, 1941, is as follows:

The relations of property between the spouses shall be determined by the law of the state of the first matrimonial domicile in all which is not prohibited by the law of the place of the location of the property and matters strictly concerning real property.

[10] As an example of a situation where the policy of local law would deny applicability of the law of a foreign jurisdiction, see *Wyatt v. Fulrath,* 16 N.Y.2d 169, 211 N.E.2d 637 (1965).

and capital gains during the years in controversy were community income.

Our conclusion that Alejandro's salary and capital gains, earned in the United States while he and Lyda were domiciled in Mexico, were community income rather than the separate property of Alejandro under New York law, as argued by respondent, is consistent with the general principle that the law governing movables is the law of the domicile of the property owner. This general principle has been applied in a host of cases involving the taxability of income earned in jurisdictions other than the taxpayer's domicile. *Commissioner v. Porter,* 148 F.2d 566, 568 (5th Cir. 1945), affg. 2 T.C. 1244 (1943) (income of New York trust held to be community property of Texas domiciliary); *Commissioner v. Sims,* 148 F.2d 574 (5th Cir. 1945), affg. a Memorandum Opinion of this Court (income of Virginia trust held community property of Texas domiciliary); *Shilkret v. Helvering,* 138 F.2d 925, 929 (D.C. Cir. 1943), affg. 46 B.T.A. 1163 (1942) (salary of New York resident earned in California held to be separate property); to the same effect see *Herbert Marshall,* 41 B.T.A. 1064, 1072 (1940); *Norman De Vaux,* 14 B.T.A. 205, 208 (1928); *Juan F. Brittingham,* 13 B.T.A. 375 (1928). The cases of *Commissioner v. Skaggs,* 122 F.2d 721 (5th Cir. 1941), revg. and remanding 38 B.T.A. 921 (1938), cert. denied 315 U.S. 811 (1942), and *Hammonds v. Commissioner,* 106 F.2d 420 (10th Cir. 1939), revg. and remanding 38 B.T.A. 4 (1938), cited by respondent, involved the application of the law of the situs to real estate and are thus clearly distinguishable from the present case.

While most of these cases involve the application of the law of one of the eight community property States of the United States, the community property system of those States was derived from Mexican and Spanish law. We can find nothing supporting respondent's view that Mexican law permits a different result. Indeed, as we read the decisions, the New York courts have recognized that the law of the owner's domicile determines whether or not property located in New York is community property. *In re Mesa's Estate, supra* (New York bank accounts of Cuban domiciliary held community property); *In re Estate of Crichton,* 20 N.Y.2d 124, 228 N.E.2d 799 (1967) (Louisiana personalty of New York domiciliary held separate property). Similarly, the Court of Appeals for the Second Circuit, in a

Federal estate tax case, held the community property laws of Cuba to be applicable where the decedent was domiciled in that country and at his death owned assets located in New York. As a result, the decedent's taxable estate for estate tax purposes in respect of property located in New York was his community share. *Sanchez v. Bowers,* 70 F.2d 715, 718 (2d Cir. 1934).

Since Lyda had a vested interest in one-half of Alejandro's salary and the capital gains, he may not be taxed on the full amount thereof. See *United States v. Mitchell,* 403 U.S. 190 (1971); *United States v. Malcolm,* 282 U.S. 792 (1931); *Bender v. Pfaff,* 282 U.S. 127 (1930); *Poe v. Seaborn,* 282 U.S. 101 (1930). Respondent erred, therefore, in attempting to include the full amount of those items in Alejandro's taxable income. Only his community share is taxable to him.

### Issue 2. Taxability of Lyda's Community Share

There remains the issue as to how Lyda's community share of the salary and capital gains should be taxed under section 871.[11] Since Alejandro was engaged in trade or business within the United States, he is concededly subject to tax on his community share of both items under section 871(c). In support of his alternative position, respondent argues that, even if one-half of such income belongs to Lyda, it retains its identity as section 871(c) income upon attribution to her under the community property system. We agree.

Since section 871(a)(1) imposed a 30-percent tax on the United States source salary income of nonresident aliens even though they were not engaged in trade or business in the United States, Lyda argues that her community share of Alejandro's salary is taxable at the 30-percent rate prescribed by that section rather than the rates prescribed by section 871(c). As to the capital gains, she maintains that since she was neither engaged in business nor present in the United States at any time during 1959 through 1961, when the gains were realized, section 871(a)(2)(A) applies to relieve her of any tax thereon.

A cursory reading of section 871(a)(1) and section 871(a)(2)(A) lends plausibility to Lyda's argument. On closer analysis, however, we think it misconceives the fundamental principles of the community property system. When the husband,

---

[11] The pertinent provisions of sec. 871 are set forth in nn. 2, 3, and 4, *supra.*

through his labor or management of the community property, earns income, either as a salary or as gain from the sale of stock, as in this case, he does so as agent or manager of the conjugal partnership, referred to as the community. The husband does not acquire ownership of the income. Ownership is in the community from the time of acquisition, and he holds title thereto not for himself but as the agent of the community. *Poe v. Seaborn, supra* at 112, 113; *Fink v. United States,* 454 F.2d 1387, 1390-1391 (Ct. Cl. 1972), cert. denied 409 U.S. 844 (1972); *Markham v. United States,* an unreported case (S.D. Cal. 1953, 45 AFTR 1143, 53-2 USTC par. 9462). The rule was stated in *Graham v. Commissioner,* 95 F.2d 174, 176 (9th Cir. 1938), revg. and remanding a Memorandum Opinion of this Court, as follows:

When a married man * * * practices a profession or engages in any gainful occupation or activity, he does so as the agent of a marital community consisting of himself and his wife. Poe v. Seaborn, supra. He cannot do so in any other way or in any other capacity. Services rendered by him are actually rendered by the community, that is to say, by him and his wife, equally. * * *

That petitioner did not personally participate in the professional labors of her husband is immaterial. One may actually render a personal service without personally performing the acts constituting the service. Otherwise a partnership acting through one of its members, or a principal acting throught [sic] an agent, could not actually render a personal service, the truth being, of course, that such services can be and, in countless instances, are actually so rendered.

In the instant case, the fact that Lyda did not personally render services in the United States and, in fact, was not physically present in this country during the taxable years does not render section 871(c) inapplicable. She was a member of the community composed of herself and her husband. As agent or manager of that community, Alejandro came to the United States and performed services for Syntex Corp., earning over $3,000 each year. The earnings were not his but those of the community, owned as much by Lyda as by himself. Through the action of her husband-agent, Lyda effectively became a nonresident alien engaged in United States business. See *Inez de Amodio,* 34 T.C. 894, 906 (1960), affd. 299 F.2d 623 (3d Cir. 1962); *Frank Handfield,* 23 T.C. 633, 637-638 (1955); *Jan Casimir Lewenhaupt,* 20 T.C. 151, 162-163 (1953), affd. per curiam 221 F.2d 227 (9th Cir. 1955). Such community income, though generated by Alejandro's personal services and stock dealings, was the United States business income of the community and is taxable one-half to Alejandro and one-half to Lyda under section 871(c). Under

that section, the important consideration is the source from which the income is derived, and in this case the disputed income was United States business income by reason of the services Alejandro performed as agent of the community. Accordingly, the provisions of section 871(a)(2)(A) do not apply.

Petitioners' reliance on *Helen Robinson Solano,* 62 T.C. 562 (1974), is misplaced. In that case, the taxpayer claimed the right under section 911 to exclude from her gross income her community share of the earnings in Spain of her nonresident alien husband. The Court denied her claim, holding in substance that her husband's income, which was earned on behalf of the community by a nonresident alien from sources without the United States, did not become income earned by her when attributed to her under the Spanish community property laws. In her hands, such attributed income did not qualify for exclusion under section 911 because it was not foreign income earned by a United States citizen. In reaching this conclusion the Court emphasized that section 911 was intended to exclude foreign income actually earned by a United States citizen abroad. The Court added that section 911(b) defined earned income for purposes of the section 911(a) exclusion as income actually earned by the individual claiming the exclusion and was not intended to include income attributed by community property laws. *Helen Robinson Solano, supra* at 567.

In the present case, however, section 871 and not section 911 is involved, and the critical distinction necessary for a decision in this case is whether or not the petitioners, husband and wife, derived business income from United States sources. Nothing in section 871 would indicate that in order to characterize income as business income from United States sources, one must actually earn the income by his or her own physical labor. To the contrary, the only definitional provisions in section 871(c) on being engaged in United States business prescribe objective income limits, and the stipulated facts in the instant case clearly establish that Alejandro, as agent of the community, was so involved.

Since the Supreme Court's recognition in *Poe v. Seaborn, supra,* and similar cases cited above, that community income is owned and taxable equally to the spouses, a myriad of problems have arisen in attempting to achieve a uniform application of the income tax irrespective of differing local property laws. "[I]n the

absence of a 'clear-cut statutory mandate' an intention should not be attributed to Congress to grant preferential treatment to taxpayers who live in community property states." *Renoir v. Commissioner,* 321 F.2d 605, 607 (9th Cir. 1963), affg. 37 T.C. 1180 (1962). Nor should such intention to favor aliens who reside in countries with community property laws be inferred. Nothing in section 871 reflects an intent to exempt from tax a nonresident alien spouse's community share of business income where that income was derived from United States sources by the agent or manager of the community. Notwithstanding petitioners' earnest arguments, we think our conclusion serves the congressional purposes of section 871 even though Lyda personally was not present in the United States at any time during the taxable years. Indeed, allowing her share of the capital gains to escape tax would frustrate those purposes.

We hold that Alejandro is not taxable on Lyda's community share of the disputed income and that Lyda is taxable on her share of both the salary and the capital gains under section 871(c). See and compare *Edith Rosenkranz,* 65 T.C. 993 (1976). To reflect our holding,

*Decisions will be entered under Rule 155.*