EDITH ROSENKRANZ, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

GEORGE W. ROSENKRANZ, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9278-72, 9281-72.    Filed February 17, 1976.

*Benjamin C. O'Sullivan,* for the petitioners.
*James Silhasek,* for the respondent.

### OPINION

To sustain the determined deficiencies in George's case, respondent relies upon section 871(c). In the form effective during the years 1958 through 1966, that section taxed capital gains as well as salary income from United States sources to a non-resident alien if he was engaged in trade or business (including the performance of services) in the United States and earned as much as $3,000.[2] George maintains that, under the laws of Mexico and Cuba, which control the ownership of the disputed items, both the capital gains and salary were community property and, therefore, only one-half thereof may be taxed to him.

Alternatively, if only one-half of the capital gains and salary may be taxed to George, respondent maintains that the other half is taxable to Edith under section 871(c). Edith concedes she is taxable under section 871(a)(1) on one-half of George's salary from United States sources, but contends that, since she was not present in the United States during 1958 through 1962, section 871(a)(2)(A) relieves her of any tax on the capital gains.

### Issue 1. Community Property

The first issue to be resolved is the ownership of the salary and stock sale income—whether it was the separate property of George or the community income of George and Edith. For the answer, we turn to the laws of Mexico, where petitioners were domiciled. *Robert P. Lord,* 60 T.C. 199, 204 (1973), affd. on this issue 525 F.2d 741 (9th Cir. 1975). As we shall discuss, those laws lead to an examination of Cuban law. To aid us in the under-

---

[2] Act of Nov. 13, 1966, Pub. L. 89-809, 80 Stat. 1539, amended sec. 871. For taxable years beginning Jan. 1, 1967, sec. 871(b) is the amended equivalent of old sec. 871(c).

standing of those laws, the parties have furnished us with English translations of the pertinent statutes, certain court opinions, and the testimony of experts in Mexican and Cuban law. Based on our study of these materials and our own independent research,[3] we have concluded that both the salary and the capital gains from the stock sales were community income.

Article 178, Civil Code of Mexico,[4] contemplates that Mexicans marrying in Mexico may agree that their property will be subject to a community property or separate property regime. That article, however, does not apply to non-Mexican citizens marrying outside of Mexico. No articles of the Civil Code of Mexico expressly deal with such cases. In such cases, the parties agree that the Mexican courts would follow what is called the "Estatuto Personal," literally translated as the "law of nationality."

Under the "Estatuto Personal," Mexico would look either to the laws of the nationality of the individuals or to the laws of their marital domicile to determine whether the marriage participants were subject to a community property regime. Prior to their marriage, petitioners were living in Cuba where they expected to become Cuban citizens and live indefinitely. They had fled Nazi persecution in Austria and Hungary and, being of the Jewish faith, were essentially "stateless persons."[5]

In these circumstances, we think petitioners are correct in their position that, under the "Estatuto Personal," the Mexican courts would look to the law of Cuba, where they were domiciled at the time of their marriage, to determine the law controlling the ownership of their marital property. In this respect, the second paragraph of article 1315 of the Cuban Civil Code is as follows: "In default of a contract regarding property, the

---

[3] Under Rule 146 of the Rules of Practice and Procedure of this Court, the determination of foreign law is treated as a ruling on a question of law.

[4] Art. 178.—The marriage contract shall be made under the system of marriage community, or under that of separation of property.

[5] Petitioners' position was not unique during World War II. Austria was incorporated into Germany in 1938 and became subject to its racial and political exclusion laws. By 1941, Germany had divested all German Jews of their citizenship, and Austrian Jews suffered the same treatment. Hungary, an Axis satellite, also enacted similar laws divesting Jews of their Hungarian citizenship. See Study on the Position of Stateless Persons, U.N. Doc. No. E/1112 (1949); Holborn, "The Legal Status of Political Refugees, 1920-1938," 32 Am. J. Int'l L. 680 (1938). The effect of statelessness is that the individual is subject to the laws of the government within whose jurisdiction he happens to reside and has no protection of the laws of his mother country. See 1 Oppenheim, International Law, Secs. 291-294, 308-313 (7th ed. 1948); 64 Yale L.J. 1164 (1955).

marriage shall be understood to have been contracted under the community property system." Since petitioners entered into no contract regarding the ownership of property, article 1315 would apply, and their property is subject to the regime of community property. This conclusion is buttressed by other provisions of Cuban law, article 187, Code of Private International Law,[6] as well as the testimony of the Cuban law expert.

Under the Cuban community property system, the wife obtains a present vested interest in one-half of the husband's earnings from employment and the increase in the value of the property purchased with such earnings. See art. 1401, Cuban Civil Code.[7] This interpretation of Cuban law is confirmed by the testimony of the expert witness as well as the decisions of the New York courts. See *Sanchez v. Bowers,* 70 F.2d 715, 718 (2d Cir. 1934); *In re Mesa's Estate,* 172 App. Div. 467, 159 N.Y.S. 59 (1st Dept. 1916), affd. per curiam 219 N.Y. 566, 114 N.E. 1069 (1916). Since Edith had a vested interest in one-half of George's salary and capital gains, he may not be taxed on the full amount thereof. See *United States v. Mitchell,* 403 U.S. 190 (1971); *United States v. Malcolm,* 282 U.S. 792 (1931); *Bender v. Pfaff,* 282 U.S. 127 (1930); *Poe v. Seaborn,* 282 U.S. 101 (1930). Respondent's determination that the full amount of the capital gains and salary are taxable to George, therefore, cannot be sustained. See and compare *Alejandro Zaffaroni,* 65 T.C. 982 (1976).

### Issue 2. Taxability of Petitioner Edith's Share of the Community Income

We have this day decided *Alejandro Zaffaroni, supra,* in which we concluded on facts similar to those in the instant case that a wife's community share of both salary and capital gains realized from United States sources through the efforts of her husband,

---

[6] Art. 187, Code of Private International Law, states as follows:

This contract is governed by the personal law common to the parties, and in the absence thereof, by that of the first matrimonial domicile.

The same laws determine, in that order, the supplemental legal control in the absence of stipulation.

[7] The interpreter-witness translated art. 1401 into the record as follows:

"To the conjugal partnership belongs: (1) Property acquired for a value consideration during the marriage at the expense of the partnership property whether the acquisition is made for the partnership or for one of the spouses only; (2) that obtained by the industries, salaries or work of the spouses of either of them; (3) the fruits, income or interest collected or accrued during the marriage forming from the partnership property or from that which belongs to either one of the spouses."

engaged in trade or business in this country, were taxable to her under section 871(c). We adhere to that conclusion here.

Briefly, in the form effective during the taxable years in controversy, section 871(a)(1)[8] taxed at a 30-percent rate the United States source salary income of nonresident aliens not engaged in trade or business in this country even though they were not physically present in this country. That section would tax Edith's community share of George's United States source salary to her, but it does not apply to the capital gains derived from the stock sales in dispute. Section 871(a)(2)(A)[9] taxes at a 30-percent rate the United States source net capital gains of a nonresident alien not engaged in trade or business in the United States, present in the United States less than 90 days during the taxable year, only if the sales or exchanges of capital assets from which the net gains were derived were effected during his presence in this country. Relying upon these provisions, Edith points out that she was not engaged in trade or business in the United States and was not present in the United States at any time during 1958 through 1962, when the disputed capital gains were realized. On this ground, she argues, she is taxable upon her community share of the salary but is taxable upon none of the capital gains.

Section 871(c),[10] however, provides that a nonresident alien

[8] SEC. 871. TAX ON NONRESIDENT ALIEN INDIVIDUALS.
(a) NO UNITED STATES BUSINESS—30 PERCENT TAX.—
(1) IMPOSITION OF TAX.—Except as otherwise provided in subsection (b) there is hereby imposed for each taxable year, in lieu of the tax imposed by section 1, on the amount received, by every nonresident alien individual not engaged in trade or business within the United States, from sources within the United States, as * * * salaries, * * * a tax of 30 percent of such amount.
[9] Sec. 871(a)(2) reads as follows:
(2) CAPITAL GAINS OF ALIENS TEMPORARILY PRESENT IN THE UNITED STATES.—In the case of a nonresident alien individual not engaged in trade or business in the United States, there is hereby imposed for each taxable year, in addition to the tax imposed by paragraph (1)—
(A) if he is present in the United States for a period or periods aggregating less than 90 days during such taxable year—a tax of 30 percent of the amount by which his gains, derived from sources within the United States, from sales or exchanges of capital assets effected during his presence in the United States exceed his losses, allocable to sources within the United States, from such sales or exchanges effected during such presence; or
[10] Sec. 871(c) provides as follows:
(c) UNITED STATES BUSINESS.—A nonresident alien individual engaged in trade or business within the United States shall be taxable without regard to subsection (a). For purposes of part I, this section, sections 881 and 882, and chapter 3, the term "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services—
(1) for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, or

engaged in business in the United States is taxable upon all United States source income if his compensation for services performed in the United States amounts to as much as $3,000. George's salary for services performed in the United States exceeded $3,000, and his activities concededly fall squarely within the terms of section 871(c). Edith argues, however, that since she personally was not engaged in United States business activities, section 871(c) does not reach her community share of the capital gains.

In *Alejandro Zaffaroni, supra,* we held on similar facts, however, that a husband who is subject to a community property regime performs services on behalf of the conjugal partnership, referred to as the community. *Poe v. Seaborn, supra* at 112, 113; *Fink v. United States,* 454 F.2d 1387 (Ct. Cl. 1972), cert. denied 409 U.S. 844 (1972); *Graham v. Commissioner,* 95 F.2d 174 (9th Cir. 1938), revg. and remanding a Memorandum Opinion of this Court. The community income so earned is as much the property of one spouse as the other, and it retains its character as the product of the services of the agent of the community in this country when attributed to the other spouse for Federal tax purposes. See *Inez de Amodio,* 34 T.C. 894, 906 (1960), affd. 299 F.2d 623 (3d Cir. 1962); *Frank Handfield,* 23 T.C. 633, 637-638 (1955); *Jan Casimir Lewenhaupt,* 20 T.C. 151, 162-163 (1953), affd. per curiam 221 F.2d 227 (9th Cir. 1955). Accordingly, Edith's community share of both the salary and capital gains is taxable to her under section 871(c). Section 871(a)(2)(A) is rendered inapplicable by the community property doctrine that George's business activities in the United States were conducted by him as agent of the community, and his earnings were as much the earnings of Edith as his own.

To reflect the foregoing conclusion,

*Decisions will be entered under Rule 155.*

(2) for an office or place of business maintained by a domestic corporation in a foreign country or in a possession of the United States,

by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of 90 days during the taxable year and whose compensation for such services does not exceed in the aggregate $3,000. Such term does not include the effecting, through a resident broker, commission agent, or custodian, of transactions in the United States in stocks or securities, or in commodities (if of a kind customarily dealt in on an organized commodity exchange, if the transaction is of the kind customarily consummated at such place, and if the alien, partnership, or corporation has no office or place of business in the United States at any time during the taxable year through which or by the direction of which such transactions in commodities are effected).