Lars E. Westerdahl, Petitioner v. Commissioner of
Internal Revenue, Respondent

Benkt E. Holmgren, Petitioner v. Commissioner of
Internal Revenue, Respondent

Docket Nos. 14535–80, 15403–80.    Filed January 11, 1984.

*Oliver Thomas Johnson, Jr., Henry Patrick Oglesby, John B.
Jones, Jr.,* and *Michael S. Bernstein,* for the petitioners.
*Jerome D. Sekula,* for the respondent.

Scott, *Judge:* Respondent determined deficiencies in peti-
tioners' Federal income taxes as follows:

| Docket No. | Petitioners | Calendar year | Deficiency |
|---|---|---|---|
| 14535–80 | Lars E. Westerdahl | 1976 | $11,216.00 |
| 15403–80 | Benkt E. Holmgren | 1978 | 20,107.02 |

Some of the issues raised by the pleadings have been disposed
of by agreement of the parties, leaving for decision whether
each petitioner, as a nonresident alien, was entitled under
section 1[1] to report only one-half of his U.S. earned income on
his Federal income tax return. Resolution of this issue depends

[1]Unless otherwise stated, all section references are to the Internal Revenue Code of 1954 as
amended and in effect during the years here in issue.

upon whether each petitioner's wife had a mature present vested interest in one-half of that petitioner's earnings.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Lars Westerdahl resided in Sweden at the time of filing his petition. For fiscal year ended February 28, 1977, Mr. Westerdahl and his wife, Helga, who are cash basis taxpayers, filed separate nonresident alien income tax returns with the Internal Revenue Service Office in Philadelphia, Pa. Although Mr. Westerdahl filed a fiscal year tax return in 1977, his 1976 earnings are taxable on a calendar year basis.

Petitioner Benkt Holmgren resided in Stockholm, Sweden, at the time of filing his petition. For calendar year 1978, Mr. Holmgren and his wife, Renate, who are cash basis taxpayers, filed separate nonresident alien income tax returns with the Internal Revenue Service Office in Philadelphia, Pa.

Mr. and Mrs. Westerdahl were married in Sweden on December 27, 1964. They never entered into a prenuptial or postnuptial property contract. Mr. and Mrs. Westerdahl are now, and at all times pertinent to this case have been, citizens of and domiciled in Sweden.

From October 21, 1975, until July 1, 1978, Mr. Westerdahl was employed in New York by International Business Machines Corp. (IBM), a New York corporation, as a Program Manager—Marketing Planning. Mr. Westerdahl held this position as an assignee from IBM Svenska Aktiebolag (IBM Svenska), a Swedish corporation that is wholly owned by IBM World Trade Europe—Middle East—Africa Corp., which is itself a wholly owned second-tier domestic subsidiary of IBM. During Mr. Westerdahl's assignment with IBM in New York, he held an L–1 (intra-company transferee) visa; Mrs. Westerdahl held an L–2 visa.

Except for Mr. Westerdahl's assignment to IBM in New York, he has worked for IBM Svenska in Sweden since April 1966. Upon his return to Sweden in July 1978, Mr. Westerdahl held the position of Marketing Staff Manager at IBM Svenska. At the time of trial, he was the Division Director at IBM Svenska.

During 1976, Mr. Westerdahl received $37,860 as compensation for his personal services performed in the United States for IBM. On his tax return for fiscal year ended February 28, 1977, Mr. Westerdahl reported only one-half of the $37,860 compensation as his income; he treated the remaining one-half as Mrs. Westerdahl's income on the ground that, under the laws of Sweden, she had a present vested interest in one-half of his income. The Federal income tax return filed by Mrs. Westerdahl in 1977 reflected this equal division of income.

On February 26, 1980, respondent mailed Mr. Westerdahl a notice of deficiency. Respondent disallowed the division of Mr. Westerdahl's U.S. earned income between Mr. and Mrs. Westerdahl with the explanation that:

*Income and Community Property Benefits*

Community property benefits are not allowed because it has not been established that your income is subject to the law of any jurisdiction that grants one spouse a present vested interest in fifty percent of the other spouse's income from personal service. Accordingly, the income of $18,930.00 shown on your spouse's return is treated as belonging to you because you earned the income. Therefore, your taxable income is increased $18,930.00.

Mr. and Mrs. Holmgren were married in Sweden on September 1, 1967. They never entered into any prenuptial or postnuptial property contract. Mr. and Mrs. Holmgren are now, and at all times pertinent to this case have been, domiciled in and are citizens of Sweden.

From August 1976 until July 1979, Mr. Holmgren was employed in New York by IBM as a Program Manager— General Systems Products. Mr. Holmgren held the position with IBM in New York as an assignee from IBM Svenska. During the assignment with IBM in New York, Mr. Holmgren held an L–1 visa; Mrs. Holmgren held an L–2 visa.

Except for his assignment to IBM in New York, Mr. Holmgren has worked for IBM Svenska in Sweden since 1959. Prior to his New York assignment, Mr. Holmgren held the position of Marketing Staff Manager. Since returning to Sweden in August 1979, Mr. Holmgren has been employed by IBM Svenska, first as a Marketing Programs and Services Manager and then as an Area Convention Manager.

During 1978, Mr. Holmgren received $61,788.80 in compensation for his personal services performed for IBM in New

York. On his 1978 Federal income tax return, Mr. Holmgren reported only one-half of his $61,788.80 compensation from IBM in New York; he treated the remaining one-half as Mrs. Holmgren's income on the ground that, under the laws of Sweden, she had a present vested interest in one-half of his income. The 1978 Federal income tax return filed by Mrs. Holmgren reflected the equal division.

On May 8, 1980, respondent mailed Mr. Holmgren a notice of deficiency. Respondent disallowed Mr. Holmgren's division of his U.S. earned income with the explanation that:

### Community Property Laws

Community property benefits have not been allowed because it has not been established that your income is subject to the law of any jurisdiction that grants one spouse a present vested interest in 50% of the other's income from personal service. Accordingly, the income of $30,894 is treated as belonging to you because you earned the income.

### OPINION

The interest of one spouse in the property brought to the marriage or acquired during marriage by the other spouse, absent agreement between them, is generally determined by the laws of their domicile. *Rosenkranz v. Commissioner*, 65 T.C. 993, 996 (1976); *Zaffaroni v. Commissioner*, 65 T.C. 982, 986–987 (1976); *Lord v. Commissioner*, 60 T.C. 199, 204 (1973), affd. on this issue 525 F.2d 741 (9th Cir. 1975).

The parties agree that petitioners were domiciled in Sweden during the years in issue and therefore the question of whether the salary earned by each petitioner is his separate property or the community property of that petitioner and his spouse is to be determined under the laws of Sweden. Both parties recognize that some interest is granted by Swedish law to a spouse comparable to the interests in property granted to a spouse in community property States in this country.[2] Respondent, however, contends that under Swedish law, a spouse does not have a present vested interest in the earnings of the other spouse. Petitioners contend that under Swedish

---

[2]Examples of interests granted in Sweden and in American community property States include (1) the division of marital property generally on an equal basis upon termination of the marriage by death or divorce, and (2) transmissibility of each spouse's interest in marital property to his or her heirs.

law, each spouse does have a present vested interest in the earnings of the other spouse and support this contention by comparing the provisions of Swedish law to the provisions of the laws of the various States which are recognized for Federal income tax purposes as community property States.

Our decision in this case, therefore, rests on our determination of whether Sweden's laws give each petitioner's wife a mature present vested interest in that petitioner's earned income.[3] If we find in the affirmative and recognize Sweden as a community property jurisdiction for Federal income tax purposes, each petitioner is entitled to treat one-half of his U.S. wages as owned by his wife and to report the remaining one-half of such wages on his Federal income tax return. On the other hand, if we conclude that the laws of Sweden do not give petitioners' wives present vested interests in petitioners' respective wages, each petitioner is obligated, as respondent contends, to report his entire U.S. earnings for Federal income tax purposes.

On brief, petitioners analyze Sweden's marital laws in relation to the laws of eight recognized American community property States and to principles set forth in *Poe v. Seaborn*, 282 U.S. 101 (1930), and three companion cases.[4] Respondent does not deny the validity of this analysis, but, based on certain statements made by experts who testified at the trial, merely argues his conclusory position that Swedish law does not give each spouse a present vested interest in the earnings of the other. In our view, respondent takes out of context most of the statements of the experts on which he relies. Therefore, we consider it more appropriate to compare the laws of Sweden, a translation of which is stipulated into the record, to the laws of the recognized community States. The basic assumption which underlies the arguments of the parties is that in order to recognize Sweden as a community property jurisdiction for purposes of our Federal income tax laws, the applicable Swedish marital laws must embody a community property system having attributes consistent with the princi-

---

[3]Under Rule 146, Tax Court Rules of Practice and Procedure, the determination of foreign law is treated as a ruling on a question of law.

[4]*Goodell v. Koch*, 282 U.S. 118 (1930); *Hopkins v. Bacon*, 282 U.S. 122 (1930); *Bender v. Pfaff*, 282 U.S. 127 (1930). *Poe v. Seaborn*, 282 U.S. 101 (1930), involves the community property laws of Washington, and the three companion cases involve the community property laws of Arizona, Texas, and Louisiana, respectively.

ples of property ownership in Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington, the American community property systems recognized for Federal income tax purposes.

While we agree with the above-stated basic assumption of the parties, before we address their analyses of the various laws, we consider it important to recognize some fundamental governing principles of community property systems and the evolutionary processes of the laws of the American community property States and the marital laws of Sweden. The cardinal principles upon which the American States' community property legal systems are built involve (1) maintenance of the separate identity of each spouse, and (2) mutuality of spousal interests in marital property. These two principles obviously presume the existence of a conjugal partnership.[5]

The community property laws of the American States are based upon the community property laws of Spain. Spain originally adopted its community property system from the Visigoths (West Goths), a north Germanic people prior to 700 A.D. The Scandinavian people developed community property systems prior to 1200 A.D. as a result of the settlement of the Goths in the area. Both groups adopted these legal systems to protect and to preserve wives' equal interests in possessions which they helped their husbands acquire during marriage. As the two systems evolved, the resulting laws were not necessarily identical. For example, community property systems derived from the Spanish laws included as community property only property acquired during marriage. By contrast, unless otherwise agreed upon by the spouses, Scandinavian community or marital property included not only property acquired during marriage but, additionally, property that had been acquired prior to marriage.[6]

Sweden developed the Swedish Marriage Code of 1920 (Swedish Code), based in part on earlier Swedish laws. The Swedish Code became effective prospectively. It established a system of spousal property relations "that lies between full

---

[5]See W. Reppy, Jr. & C. Samuel, Community Property in the United States 3 (2d ed. 1982); W. DeFuniak & M. Vaughn, Principles of Community Property 6 (2d ed. 1971).

[6]The statutes of the various Scandinavian countries have allowed the spouses to consent in writing to the exclusion of certain properties from the community.

community of property and fully separate property."[7] This statement encapsules the idea projected by a number of commentators that the Swedish Code literally creates a type of "deferred community property system."[8]

We are concerned with whether the Swedish Code embodies a system of marital laws that establishes deferred community property rather than a system that is characterized by the vesting of a present interest in marital property. It is clear from the Swedish Code that each spouse is responsible for and administers the marital property that he or she brings into the marriage. For example, wages that one spouse earns are administered by that wage-earner spouse.[9] It is also clear that each spouse is entitled to one-half of the couple's accumulated marital property when the marriage is dissolved by death or divorce.[10] This latter effect operates as a matter of law and is based upon the Swedish concept of "giftoratt," as provided for in Swedish Code, chapter 6, section 1:

Each spouse has giftoratt in the property which the other has at the time the marriage takes place and that which he/she later acquires, with the exception of property which is to be separate as later provided. That property of a spouse, in which the other has giftoratt, is called his/her marital property.

The issue here is whether a giftoratt is a type of present vested interest of one spouse in the earnings of the other.

Translation of the term "giftoratt" is illusory. The parties stipulated that the term has been translated as a "right to marital property"[11] and as a "right by marriage to joint property."[12] Utilized in the statutory context of Swedish Code, chapter 6, section 1, several sources have interpreted "gifto-

---

[7]Sussman, "Spouses and Their Property Under Swedish Law," 12 The Am. J. of Comp. L. 553, 554 (1963).

[8]"Foreign Approaches to the Division of Matrimonial Property," Library of Congress 144 (1978). See also Sussman, *supra* at 555, where he states that "Upon the dissolution of the 'community,' the giftoratt, until then only a claim, becomes a share in the other spouse's property. The actual partition of the 'community' and realization of this share occurs at bodelning [a nonjudicial procedure which partitions the community]." Fn. ref. omitted.

[9]Under the income tax laws of Sweden, wages are considered "A" income, taxable separately to the wage earner. However, joint taxation continues as to "B" or unearned income. Under Sweden's taxation scheme, the ultimate aim is to gradually remove the joint taxation elements and to revise the system to be one of individual taxation.

[10]Swedish Code, ch. 13, sec. 1.

[11]T. Backe, A. Bruzelius & E. Wangstedt, Concise Swedish-English Glossary of Legal Terms.

[12]Translation by the U.S. Department of State, Division of Language Services.

ratt" to mean a property right in the marital property brought into the marriage by the other spouse.[13] The marital property, or "united giftorattgods," continues until division at death or divorce, at which times either a bodelning (a nonjudicial division procedure) or a boskillnad (a judicial decree that sanctions the partitioning) occurs.

The relationship of Sweden's legal concepts of giftoratt, bodelning, and boskillnad holds a key to the time when a spouse acquires a present vested interest in marital properties contributed to the marriage by the efforts of the other spouse. For sake of explanation, suppose, as in the instant case, a portion of the marital property consists of a spouse's wages. If the non-wage earner spouse does not acquire a present vested interest in such wages at the time the wages are earned and the giftoratt attaches, but instead merely acquires a claim to or expectancy in such wages which vests at bodelning or boskillnad, the laws of Sweden do not give the non-wage earner spouse a sufficient interest in the earnings for us to consider them as vesting equal ownership in the two spouses at the time the wages are earned and the giftoratt arises. In that event, petitioners would not be entitled to split with their wives the reporting of their respective U.S. earned incomes.

Petitioners argue that their wives had present vested interests in petitioners' respective U.S. salaries because two "requisite" conditions enunciated by the Supreme Court are present in Sweden's marital laws. The Supreme Court case upon which petitioners rely, *Poe v. Seaborn, supra*, involved the question of whether Mr. Seaborn was obligated to report on his Federal income tax return for 1927 the entire amount of his salary, interest, dividends, and profits from sales of real and personal property, all of which undisputably were community property under the laws of Washington State, or whether he and his wife each were entitled to report on separate returns one-half of those community property items. The Court interpreted sections 210(a) and 211(a) of the 1926 Revenue Act, the predecessor provisions of section 1. Those statutes provided for the taxation of the net income of every individual. The Court

---

[13]The parties have stipulated that this translation comes from the following three sources: U.S. Library of Congress, "Foreign Approaches to the Division of Matrimonial Property"; Swedish Foreign Law Institute, "Translation of the Swedish Marriage Code"; J. Sellin, "Marriage and Divorce Legislation in Sweden."

found that the word "of" as used in the statutes denotes ownership and held that an individual is taxed on the entire amount of the net income that he owns. The Court concluded that Mr. Seaborn was not the sole owner of the community property items; rather, it held that Mrs. Seaborn clearly had a vested property right in the community property items, including wages, equal to that of her husband.[14] In making this determination, the Court looked at the spouses' responsibilities, legal obligations, and limitations with respect to one another and to the community property. It regarded several factors as particularly important, but it did not label these factors as requisites for finding a present vested interest.[15] The several factors, when combined and viewed as two broad attributes, include: Protection of the interest of each spouse in the community property (1) by legally assuring its testamentary disposition or its passage to the decedent's issue rather than to the surviving spouse, and (2) by limiting the managing spouse's powers of management and control so that detriment to the nonmanaging spouse from fraud or mismanagement will be minimized.

We agree with petitioners that the Swedish Code addresses the two broad attributes outlined above. Two relevant statutes protect the spouse's right to dispose of his/her giftoratt interest at death:

Swedish Code, chapter 12, section 1, provides that—

---

[14]In the three companion cases listed in note 4 *supra*, the Supreme Court similarly held that under the laws of the relevant community property States, the wife had a present vested interest in the community property, including earned income.

[15]The Supreme Court in *Poe v. Seaborn, supra*, stated (p. 110):

"What, then, is the law of Washington as to the ownership of community property and of community income including the earnings of the husband's and wife's labor?

"The answer is found in the statutes of the State, and the decisions interpreting them.

"These statutes provide that, save for property acquired by gift, bequest, devise or inheritance, all property however acquired after marriage, by either husband or wife, or by both, is community property. On the death of either spouse his or her interest is subject to testamentary disposition, and failing that, it passes to the issue of the decedent and not to the surviving spouse. While the husband has the management and control of community personal property and like power of disposition thereof as of his separate personal property, this power is subject to restrictions which are inconsistent with denial of the wife's interest as co-owner. The wife may borrow for community purposes and bind the community property. * * * Since the husband may not discharge his separate obligation out of community property, she may, suing alone, enjoin collection of his separate debt out of community property. * * * She may prevent his making substantial gifts out of community property without her consent. * * * The community property is not liable for the husband's torts not committed in carrying on the business of the community. * * * "

Upon the death of a spouse the property shall be divided unless neither spouse has marital property due to pre- or post-nuptial agreement, separation of property, or separation.

In pertinent part, Swedish Code, chapter 6, section 2, provides that—

In case of divorce, separation of property, or separation, each spouse or his/her heirs shall take half of the remaining marital property, unless this law otherwise provides.

These statutes indicate that at death when marital property is partitioned, the surviving spouse is entitled to a one-half share of the marital property and the remaining one-half goes to the decedent spouse's estate for testate disposition or intestate disposition to his/her heirs. Affirmative steps need not be taken for this passage to heirs to occur and the surviving spouse may not interfere with this transfer of marital property. A number of Swedish Code statutes protect the nonmanaging spouse's interest in marital property against fraud or mismanagement by the managing spouse. For example, a spouse is required to manage the marital property that he/she administers "in such manner that it does not unduly decrease to the detriment of the other" spouse. Swedish Code, ch. 6, sec. 3.[16] The Swedish Code specifies sanctions for violation of this statute; it grants the harmed spouse both a right of claim to receive compensation at bodelning if marital property has been substantially diminished as a result of misuse of the property and a ground to seek partition of the marital property. Swedish Code, ch. 13, sec. 6; ch. 9, sec. 1.[17] Another

---

[16]Swedish Code, ch. 6, sec. 3, provides:

"A spouse must manage his/her marital property in such manner that it does not unduly decrease to the detriment of the other."

[17]Swedish Code, ch. 13, sec. 6, provides:

"If A spouse has by mismanagement of his economic affairs, by abusing his right to control his marital property, or by other improper conduct caused a considerable decrease in such property, the other may receive compensation out of their marital property. If this does not suffice and if the one responsible for the compensation has private property, compensation for half of the balance shall be made out of such private property not needed for the satisfaction of debts."

Swedish Code, ch. 9, sec. 1, provides:

"Under application, a spouse may gain separation of property
"1. if the other, through mismanagement of his financial affairs, through abuse of his right to control his marital property, or through other improper conduct causes a material decrease in his marital property or causes a danger of such decrease, and
"2. if the property of the other spouse has been surrendered to creditors."

sanction exists to protect a spouse's giftoratt against unwarranted depletion through excessive gift giving of marital property. Swedish Code, chapter 6, section 6a, provides that a donee shall return the gift or its value if he knew or should have known that the gift giving was detrimental to the nondonor spouse.[18] The Swedish Code further protects a spouse from excessive depletion of marital real property through mismanagement by providing that a "spouse may not dispose of or mortgage real property in which the other has giftoratt, unless the latter has consented thereto"; a nonconsenting spouse may protest against a managing spouse's transfer of marital real property if such protest is made within 1 year of the realty's conveyance or mortgage recordation. Swedish Code, ch. 6, sec. 4.[19]

Respondent recognizes that the Swedish Code restricts transfers of marital property in attempts to defraud a spouse and that, likewise, all eight American community property States similarly prohibit transfers of community property in attempts to defraud a spouse. However, citing *Zaffaroni v. Commissioner*, 65 T.C. 982 (1976), he states that such prohibitions are irrelevant because therein we did not discuss statutes that prohibit fraudulent transfers of community property. In that case, we cited several sections of the Civil Code of Uruguay. We found that in Uruguay, the taxpayer-husband's wages were considered community property, and we concluded that the wife had a present vested interest in such community property. Contrary to respondent's suggestion that statutes

---

[18]Swedish Code, ch. 6, sec. 6a, provides: ·

"If a spouse with disregard of the giftoratt of the other spouse has substantially diminished his/her property by making gifts of property other than described in section 4, and if at the end of the marriage or division of the assets it is not possible to make full restitution, the recipient of the gift shall return the gift or its value to the extent that this is necessary to cover the rights of the other spouse, provided that the recipient knew or ought to have known that the gift was to the detriment of the other.

"If a gift as mentioned above has not been completed at the time of the divisions of the assets, it cannot be claimed to the extent that this would be to the detriment of the other spouse."

[19]Swedish Code, ch. 6, sec. 4, provides:

"A spouse may not dispose of or mortgage real property in which the other has giftoratt, unless the latter has consented thereto in writing and in the presence of two witnesses. * * *

"If a spouse has entered into a transaction as stated in the previous subsection without getting the consent necessary, the transaction is illegal if it is protested by the other spouse, his/her guardian, or his/her trustee. This protest must be made within three months from the time he/she learned of the transaction and not later than a year from the time the conveyance or mortgage was recorded."

prohibiting fraudulent transfers are irrelevant to the decision at hand, we believe that the existence or nonexistence of such statutes is one factor to consider.

The two broad attributes of *Poe v. Seaborn, supra,* are only two of a number of factors to be considered when making a determination of whether a spouse has a present vested interest in community property. In reviewing the statutes of the eight American community property States, we are aware of the presence or lack of presence of rules that—

(1) Make the community property liable for the managing spouse's separate torts;

(2) Prevent the nonmanaging spouse from obligating by contract the community property;

(3) Require, except in extraordinary circumstances, equal division of the community property upon its partition at divorce;

(4) Allow the managing spouse to discharge his separate debts from community property; and

(5) Require the managing spouse to make an accounting of all community property, including wages, when partitioned at the time of divorce.

No one factor is determinative of the issue at hand.

The Swedish Code addresses a number of these additional factors. For example, with the exception of debt incurred in connection with common household items and needs, in Sweden each spouse is responsible to repay his/her separate indebtedness; the spouse may make such repayments from his/her separate property or his/her interest in the marital property. Swedish Code, ch. 7, sec. 1.[20] By comparison, the majority of the eight American community property States require similar treatment of the separate debts of spouses; some of the States that allow repayment of separate debts from community property require the spouse to reimburse the community for the expended funds. Additionally, as above explained, the Swedish code requires that a married couple's marital property be divided equally upon separation or disso-

---

[20]Swedish Code, ch. 7, sec. 1, provides:

*Chapter 7. The Debts of Husband and Wife*

Sec. 1. Each spouse shall with his/her separate or marital property answer for debts contracted by him/her before or during the marriage.

lution of the marriage by death or by divorce. After this initial equal division, the partition may be modified only where the nonmanaging spouse's interest has been unduly depleted through fraud or mismanagement of the managing spouse. By comparison, the majority of the American community property States allow an ultimate unequal division of marital property only where the court deems it just and equitable. The Swedish Code does not address specifically the question of whether the managing spouse must, at the time of partition, make an accounting of the acquisition and disposition of all marital property, including wages. However, the testimony reveals that, although an accounting would be necessary to divide the marital property in existence at the time of partition, a spouse may not be required to account for previously earned and expended wages. Similarly, the laws of the eight American community property States are not clear in requiring an accounting of previously earned and expended wages. However, it appears that such a reconstruction and tracing for a lengthy marriage would be an arduous, if not impossible task.

Although certain attributes of a spouse's giftoratt may appear to suggest a deferred interest or claim in marital property rather than a present vested interest,[21] all of these indicia are present in some of the recognized American community property States. We have weighed the presence and absence of the various attributes indicative of community property jurisdictions, and we are of the opinion that the laws of Sweden give a spouse a present vested interest in marital property which matures at the time the property is contributed to the marriage by the other spouse. Therefore, we conclude that petitioners' spouses had present vested interests in petitioners' U.S. earned income at the time the wages were earned. Accordingly, petitioners are entitled to report only one-half of their U.S. earnings on their respective Federal income tax returns for the years in issue.

*Decisions will be entered under Rule 155.*

---

[21]Several attributes which suggest that a spouse's giftoratt is not a present vested interest are: (1) The giftoratt is not transferable during marriage; (2) a bank or other creditor likely will not

---

value a spouse's giftoratt interest upon the spouse's application to obtain a loan and will not allow it to be used as collateral to secure a loan; and (3) a spouse may bind marital property contributed by the other spouse only for payment of children's educations and daily household needs.