OTTO A. ANGERHOFER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 22182-83, 17013-84,    Filed October 21, 1986.
17014-84, 26793-84,
40702-84, 40703-84,
5812-85.

*O. Thomas Johnson, Jr.*, and *John B. Jones, Jr.*, for the petitioners.
*Frank M. Lavadera*, for the respondent.

PARR, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Petitioner | Fiscal year | Calendar year | Deficiency |
|---|---|---|---|
| Otto A. Angerhofer | | 1980 | $6,632.09 |
| Monika Angerhofer | | 1980 | 1,166.00 |
| Karl-Eduard Biedermann | | 1981 | 4,904.00 |
| Werner A. Ewert | Aug. 31, 1979 | | 57,524.58 |
| | Aug. 31, 1980 | | 33,246.00 |
| Hedda Ewert | Aug. 31, 1979 | | 14,401.87 |
| | Aug. 31, 1980 | | 9,458.00 |

---

[9]See also *Howe v. Commissioner*, T.C. Memo. 1985-213.
[1]The following cases were consolidated for trial, briefing, and opinion: Otto A. Angerhofer, docket No. 22182-83; Monika Angerhofer, docket No. 26793-84; Karl-Eduard Biedermann, docket No. 5812-85; Werner A. Ewert, docket No. 17014-84; Hedda Ewert, docket No. 17013-84; Helmut Wenzel, docket No. 40702-84; Annemarie Wenzel, docket No. 40703-84.

|  Petitioner  |  Fiscal year  |  Calendar year  |  Deficiency  |
|---|---|---|---|
|  Helmut Wenzel  |  |  1979  |  $42,092.00  |
|  |  |  1980  |  34,667.00  |
|  |  May 31, 1979  |  |  22,640.00  |
|  |  May 31, 1980  |  |  29,988.00  |
|  |  May 31, 1981  |  |  18,321.00  |
|  Annemarie Wenzel  |  |  1979  |  11,857.00  |
|  |  |  1980  |  5,760.00  |
|  |  May 31, 1979  |  |  3,714.00  |
|  |  May 31, 1980  |  |  5,390.00  |

The issue for decision[2] is whether petitioners Otto A. Angerhofer, Karl-Eduard Biedermann, Werner A. Ewert and Helmut Wenzel, citizens and domiciliaries of the Federal Republic of Germany (Germany) during the years at issue, are properly taxable on all or only one-half of the wages earned while temporarily in the United States. Those petitioners (hereinafter sometimes referred to as petitioner-husbands) argue that only one-half of such wages are includable in their taxable income on the ground that under the law of Germany, their wives (petitioners Monika Angerhofer, Hedda Ewert, and Annemarie Wenzel, sometimes referred to as petitioner-wives[3]) had a present vested interest in one-half of their earnings.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference.

Petitioners Otto A. and Monika Angerhofer resided in Germany at the time the petitions in docket Nos. 22182-83 and 26793-84 were filed. The Angerhofers are now, and at all times pertinent to these cases have been, citizens and domiciliaries of Germany.

---

[2]At trial, the Court granted the parties' joint motion to sever all secondary issues from the trial of this issue. The intent of the parties is that those secondary issues will be resolved without trial and will be the subject of a supplemental stipulation to be filed by the parties with the Court.

[3]Karl-Eduard Biedermann's wife, Karla, did not receive a notice of deficiency from respondent, and thus is not a petitioner in this case. For convenience, however, the term petitioner-wife as used herein should be deemed to refer to Mrs. Biedermann as well as the other petitioner-wives.

The Angerhofers were married in Germany on August 23, 1974, and have never entered into any marital property contract.

From October 8, 1979, until July, 1980, Mr. Angerhofer was employed in New York by International Business Machines Corporation (IBM), a New York corporation, as a mechanical engineer. While employed by IBM in the United States, Mr. Angerhofer was on assignment from IBM Deutschland GmbH (IBM Deutschland). During this period, Mr. Angerhofer held an L-1 (intra-company transferee) visa, and Mrs. Angerhofer held an L-2 visa.

Since returning to Germany in July 1980, Mr. Angerhofer has been continuously employed by IBM Deutschland.

For the calendar year 1980, the Angerhofers, cash basis taxpayers, filed separate nonresident alien income tax returns with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On his return for 1980, Mr. Angerhofer reported only one-half of his compensation from IBM. His return stated that he and his wife were domiciled in Germany, a community property country, and that such income was community income. The income tax return filed by Mrs. Angerhofer for 1980 reported the other one-half of Mr. Angerhofer's 1980 compensation.

Petitioner Karl-Eduard Biedermann resided in Germany at the time the petition in docket No. 5812-85 was filed. Mr. Biedermann and his wife, Karla Biedermann, are now, and at all times pertinent to this case have been, citizens and domiciliaries of Germany.

The Biedermanns were married in Germany on March 20, 1954, and have never entered into any marital property contract.[4]

From November 1, 1980, until June 9, 1981, Mr. Biedermann was employed in New York by IBM as a data-processing consultant. While employed by IBM in the United States, Mr. Biedermann was on assignment from IBM Deutschland. During this period, Mr. Biedermann held an L-1 visa and Mrs. Biedermann held an L-2 visa.

---

[4]Petitioner Karl-Eduard Biedermann originally argued that he and his wife had elected an optional marital regime known as gümutergemeinschaft, which respondent concedes is a community property regime. On brief, however, petitioner conceded that the marital contract had never been properly notarized or filed, as required under German law.

Since returning to Germany in June 1981, Mr. Biedermann has been continuously employed by IBM Deutschland.

For the calendar year 1981, the Biedermanns, cash basis taxpayers, filed separate nonresident alien returns with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On his income tax return, Mr. Biedermann reported only one-half of his compensation from IBM. His return stated that he and his wife were domiciled in Germany, a community property country, and that such income was community income. Mrs. Biedermann's 1981 income tax return reported the other one-half of Mr. Biedermann's 1981 compensation.

Petitioners Werner A. Ewert and Hedda Ewert resided in Germany at the time the petitions in docket Nos. 17014-84 and 17013-84 were filed. The Ewerts are now, and at all times pertinent to these cases have been, citizens and domiciliaries of Germany.

The Ewerts were married in Germany on April 28, 1956, and have never entered into any marital property contract.[5]

From March 1977, until February 1980, Mr. Ewert was employed in New York by IBM as a manager of marketing, support, and services. While employed by IBM in the United States, Mr. Ewert was on assignment from IBM Deutschland. During this period, Mr. Ewert held an L-1 visa and Mrs. Ewert held an L-2 visa.

Since returning to Germany in February 1980, Mr. Ewert has been continuously employed by IBM Deutschland.

For the fiscal years ending August 31, 1979 and August 31, 1980, the Ewerts, who are cash basis taxpayers, filed separate nonresident alien income tax returns with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On his returns, Mr. Ewert reported only one-half of the compensation that he earned from IBM during 1979 and 1980. The returns stated that he and his wife were domiciled in Germany, a community property country, and that such income was community property income. Mrs.

---

[5]The Ewerts also originally argued that they had privately contracted the marital regime gümutergemeinschaft, but conceded on brief that their agreement was not binding under German law.

Ewert's returns for those fiscal years reported the other one-half of Mr. Ewert's 1979 and 1980 compensation.

Petitioners Helmut Wenzel and Annemarie Wenzel resided in Germany at the time the petitions in docket Nos. 40702-84 and 40703-84 were filed. The Wenzels are now, and at all times pertinent to these cases have been, citizens and domiciliaries of Germany.

The Wenzels were married in Germany on May 9, 1963, and have never entered into any marital property contract. From December 1, 1978, until December 22, 1980, Mr. Wenzel was employed in New York by IBM as a personnel manager. While employed by IBM in the United States, Mr. Wenzel was on assignment from IBM Deutschland. During this period, Mr. Wenzel held an L-1 visa and Mrs. Wenzel held an L-2 visa.

Since returning to Germany in December 1980, Mr. Wenzel has been continuously employed by IBM Deutschland.

For the fiscal years ending May 31, 1979, May 31, 1980, and May 31, 1981, the Wenzels, who are cash basis taxpayers, filed separate nonresident alien income tax returns with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On his returns, Mr. Wenzel reported only one-half of the compensation he earned from IBM during 1979 through 1981. The returns stated that he and his wife were domiciled in Germany, a community property country, and that such income was community property income. Mrs. Wenzel's returns for those fiscal years[6] reported the other one-half of Mr. Wenzel's compensation.

In his notices of deficiency to petitioner-husbands, respondent disallowed the claimed community property benefits, stating:

Community property benefits have been disallowed because it has not been established that your spouse's income is subject to the law of any jurisdiction that grants one spouse a present vested interest in 50 percent of the other's income from personal services.

_____

[6]Mrs. Wenzel received a notice of deficiency with regard to her fiscal year 1979 and 1980 returns only.

OPINION

Section 1[7] imposes a tax "on the taxable income of every married individual (as defined in section 143) who does not make a single return jointly with his spouse under section 6013." Petitioners, nonresident aliens, are ineligible to file joint returns under section 6013(a)(1).

Notwithstanding that prohibition, petitioner-husbands may effectively split their income with their nonwage-earner wives if such income is "community income" in which each spouse has a present vested interest. *Poe v. Seaborn*, 282 U.S. 101 (1930); *Goodell v. Koch*, 282 U.S. 118 (1930); *Hopkins v. Bacon*, 282 U.S. 122 (1930); *Bender v. Pfaff*, 282 U.S. 127 (1930).

The interest of one spouse in the property brought to the marriage or acquired during marriage by the other spouse, absent agreement between them, is generally determined by the laws of their domicile. *Westerdahl v. Commissioner*, 82 T.C. 83, 86 (1984); *Rosenkranz v. Commissioner*, 65 T.C. 993, 996 (1976); *Zaffaroni v. Commissioner*, 65 T.C. 982, 986-987 (1976).

The parties agree that petitioners were domiciled in Germany during the years in issue. Therefore, the question of whether the salary earned by each petitioner-husband is his separate property or the community property of both him and his wife is to be determined under the laws of Germany. We must determine whether German law gives each petitioner-wife a present vested interest in her husband's earned income.[8] Under Rule 146, Tax Court Rules of Practice and Procedure, the determination of foreign law is treated as a ruling on a question of law.

The parties have stipulated copies of pertinent provisions of the Bürgerliches Gesetzbuch (hereinafter BGB), the German Civil Code, together with English translations thereof. In addition, the parties presented the testimony of experts in German law. We have considered the evidence presented

---

[7]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

[8]We note that for tax years beginning after 1984, sec. 879(a) has eliminated the tax benefits sought in these cases, by providing that in the case of a married couple where one or both of the spouses are nonresident aliens and only one spouse has income effectively connected with a U.S. trade or business, such income is treated solely as the income of the spouse who earned it, regardless of foreign community property laws.

and have analyzed the applicable German law in light of the standards we set forth in *Westerdahl v. Commissioner, supra.* We conclude that the German matrimonial regime which governs petitioners' marital relationships is not one of community property, and therefore each spouse does not have a present vested interest in one-half of the other spouse's earnings. Petitioner-husbands must therefore include in taxable income the full amount of their earnings while employed in the United States.

German law provides for three alternative marital regimes, gütertrennung, gütergemeinschaft, and zugewinngemeinschaft. The three regimes in their present form were introduced by the Law on the Equality of the Sexes of 1958. The first two marital regimes are elective; in the absence of a proper election a couple's marital relationship is governed by zugewinngemeinschaft, also known as the statutory marital regime. Zugewinngemeinschaft is generally translated into English as "community of accrued gains."

As noted previously, none of the petitioners in this case have made a proper election for a regime other than the statutory regime. We must therefore analyze the laws governing the zugewinngemeinschaft regime to determine whether a spouse has a present vested interest in one-half of the income earned by the other spouse. It is helpful to our analysis, however, to first briefly describe the two optional marital regimes for purposes of comparison.

BGB section 1414 provides for the establishment of the gütertrennung ("separation of property") regime as follows:

> If the spouses exclude or eliminate the statutory matrimonial regime, separation of property occurs, except if their marriage contract otherwise provides. The same applies if the equalization of accrued gains is excluded or the equalization of support or the community of property is eliminated.

Gütertrennung is thus an elective regime in which each spouse acquires and maintains his or her own separate property, with no ownership interest in property acquired by the other spouse. A spouse may freely manage his or her income or property without restriction.

In contrast, gütergemeinschaft ("community of property") provides for a joint pot of marital property, known as the gesamtgut, which both spouses own equally. The management of the gesamtgut is therefore subject to restrictions intended to assure the protection of each spouse's share of the marital property.

BGB sections 1415 through 1518 provide for the gütergemeinschaft matrimonial regime. BGB section 1416(1) states that:

> The property of the husband and the property of the wife become through community of property the joint property of both spouses (common property). Property which comes into the ownership of husband or wife during the period of community of property also belongs to the common property.

The spouses must agree by notarized contract to have community of property. BGB sec. 1410. Although property acquired during the marriage is common property, property owned by either spouse prior to the marriage can remain separate property, as well as the appreciation relating to that property. BGB sec. 1418, 1477, 1478. The common property is managed by both spouses jointly, in the absence of an agreement providing otherwise. BGB sec. 1421. Upon termination of the marriage, the goods comprising the gesamtgut are divided equally between the spouses. BGB sec. 1471 et seq. If the marriage terminates at death, the share of the deceased spouse in the gesamtgut belongs to his or her estate and thus passes to his or her beneficiaries or legal heirs. BGB sec. 1482.

Where a marriage is governed by the gütergemeinschaft regime, and the property is managed jointly, neither spouse can individually obligate the common property, except for household obligations. BGB sec. 1450 et seq. If one spouse has been designated the manager, he or she can obligate the property, but has a duty of proper management. BGB sec. 1435. If the managing spouse improperly obliges or risks the gesamtgut, the other spouse can sue to restore the amount to the gesamtgut, or bring an action for premature dissolution of the matrimonial regime. The latter remedy results in the premature division of the joint property, and gütertrennung applies thereafter. BGB sec. 1447, 1449.

In the absence of a valid election, a German couple is subject to the zugewinngemeinschaft regime, which contains some elements of the gütergemeinschaft, but with notable exceptions. It is this regime that is at issue in these cases.

Sections 1363 through 1383 of the BGB describe the zugewinngemeinschaft, the statutory marital regime. BGB section 1363, which describes the regime generally, is particularly significant to our determination of whether a spouse has a present vested interest in the other spouse's property:

Section 1363. [Community of Accrued Gains].

(1) The matrimonial regime in which the spouses live is one of community of accrued gains unless they agreed otherwise by marriage contract.

(2) The property of the husband and the property of the wife will not become joint property of the spouses; this also applies to property acquired by a spouse after entering the marriage. Gains made by the spouses during the marriage shall, however, be equalized if the community of accrued gains comes to an end.

This regime therefore provides for the ownership and maintenance of separate property by husband and wife, with an "equalization of gains" upon termination of the marriage. Equalization is effected in different ways, depending on whether the marriage terminates by death or inter vivos.

Where the marriage (or, more accurately, the marital regime) ends inter vivos, each spouse's zugewinn ("increment of property owned") is calculated and the two figures are compared. The difference is divided in half and this amount becomes a monetary claim of the spouse with the smaller zugewinn. The zugewinn is computed by comparing the property a spouse owned at the beginning of the marriage with the property owned at the end of the marriage. Gifts or inheritances received by a spouse during the marriage are included in his or her beginning property. Where a spouse's beginning property has appreciated during the marriage, the appreciation is included in accrued gains; however, there is an adjustment to account for inflationary gains. The procedure for partitioning the "community of accrued gains" is thus one of valuation, computa-

tion, and payment of a monetary amount to the spouse with the smaller zugewinn. See generally BGB secs. 1373 through 1383.

The zugewinngemeinschaft can come to an end inter vivos by several means: divorce, voidance of the marriage, separation for more than 3 years, or premature equalization.

Under zugewinngemeinschaft, each spouse manages his or her own property independently. BGB sec. 1364. Certain restrictions apply to prevent detriment to the other spouse, however. The only two true restrictions are on disposing of one's entire estate or disposing of household goods without the other spouse's consent. BGB secs. 1365, 1369. In addition, where a spouse wastes assets, makes improper gifts, or transfers assets to the detriment of the other spouse, those amounts are treated as still part of his or her final estate, and are included in the amount to be equalized. BGB sec. 1375. Examples in this category are a spouse's gambling or gifts to a mistress.

Where a spouse attempts to dispose of his or her entire estate, or makes gifts or otherwise wastes assets so that the other spouse's equalization claim may be jeopardized, a claim for premature equalization may be brought and the marriage will continue under gümutertrennung. BGB secs. 1386, 1388. However, if there will be sufficient property in the estate to satisfy the equalization claim, there is no jeopardy, and therefore the remedy of premature equalization is unavailable.

The equalization claim always takes the form of a monetary claim by the spouse with the smaller zugewinn. It is not a division of property. In addition, the spouse with the smaller zugewinn can only collect up to the amount in the other spouse's estate. BGB sec. 1378(2). (However, where the spouse with the larger zugewinn cannot fulfill his or her equalization obligation due to having made unjust gifts to a third party, the other spouse can sue the third party for restitution of the gifts. BGB sec. 1390).

Where the marital regime terminates by the death of a spouse, the equalization of accrued gains as described above need not take place. Instead, if there is no will, the surviving spouse is entitled to a "constructive equalization" which is an extra one-quarter of the deceased spouse's

estate over and above the surviving spouse's statutory share. The surviving spouses's statutory share is either 100 percent, 50 percent, or 25 percent of the estate, depending on the existence of other heirs. A surviving spouse is entitled to constructive equalization upon the intestate death of his or her spouse regardless of who had the larger or smaller zugewinn. BGB sec. 1371(1).

If there is a will, but it leaves the surviving spouse less than half of the statutory share (grossed-up by the extra one-quarter), he or she can demand from the heirs the difference between the bequest and that amount. If the surviving spouse is left nothing under the will, he or she can demand actual equalization of accrued gains plus the statutory share, which in this case is not grossed-up by the additional one-quarter. Lastly, if the will leaves the surviving spouse more than half the grossed-up statutory share, but less than the actual equalization claim plus statutory share, the surviving spouse may disclaim the inheritance and elect equalization plus the statutory share. See BGB secs. 1371, 2303, 2305.

If it is the spouse with the smaller zugewinn who has died, his or her estate is not entitled to the equalization claim which might have been claimed had the marriage ended inter vivos. Therefore, the equalization claim is only transmittable to a spouse's descendants if he or she is alive at the time of equalization.

During the continuation of the marital regime, the spouses treat their property as separate property. A spouse cannot obligate the other spouse's property as collateral. A creditor of one spouse cannot attach the property of the other spouse to satisfy the debt (unless the debt was incurred in managing the household) or the tort liability of the first spouse. As stated above, a spouse may freely transfer his or her own separate property (except for household goods or the entire estate), although the value of certain transferred assets may later be brought back into the computation of accrued gains.

The equalization claim arises only upon termination of the marital regime. BGB sec. 1378(3). It cannot be used as collateral, bequeathed, or otherwise disposed of prior to the end of the marriage.

Upon termination of the marital relationship, there is no tax to the spouse who receives the equalization amount, under either the German gift tax, income tax, or inheritance tax provisions.

In determining whether the zugewinngemeinschaft regime, described above, gives petitioner-wives a present vested interest in their husbands' earnings, we rely to a considerable extent on our opinion in *Westerdahl v. Commissioner*, 82 T.C. 83 (1984). In *Westerdahl*, we determined that under the laws of Sweden, the taxpayers' U.S. earnings were community property. We began our analysis with a general discussion of the American community property States:

The cardinal principles upon which the American States' community property legal systems are built involve (1) maintenance of the separate identity of each spouse, and (2) mutuality of spousal interests in marital property. These two principles obviously presume the existence of a conjugal partnership. [*Westerdahl v. Commissioner, supra* at 88. Fn. ref. omitted.]

Like the taxpayers in *Westerdahl*, petitioners herein argue that Germany's marital laws should be compared with the laws of the eight recognized American community property States[9] and the principles set forth in *Poe v. Seaborn*, 282 U.S. 101 (1930), and its companion cases (cited *supra*). We agree. In support of this argument, petitioners on brief have devoted much attention to analyzing the restrictions on management of property and the division of property at the end of a marriage under both zugewinngemeinschaft and the American community property States. We accept petitioners' analysis and agree that many of the attributes of a community property system are found in zugewinngemeinschaft. It is what is not found that is determinative in this instance, however.

The Supreme Court in *Poe v. Seaborn, supra*, found that Mrs. Seaborn had a present vested interest in her husband's income based on the laws of Washington State. As we stated in *Westerdahl*,

In making this determination, the Court looked at the spouses' responsibilities, legal obligations, and limitations with respect to one another and

---

[9]Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington.

to the community property. It regarded several factors as particularly important, but it did not label these factors as requisites for finding a present vested interest. The several factors, when combined and viewed as two broad attributes, include: Protection of the interest of each spouse in the community property (1) by legally assuring its testamentary disposition or its passage to the decedent's issue rather than to the surviving spouse, and (2) by limiting the managing spouse's powers of management and control so that detriment to the nonmanaging spouse from fraud or mismanagement will be minimized.

[*Westerdahl v. Commissioner, supra* at 91. Fn. ref. omitted.]

We also noted that in addition to the two broad attributes of *Poe v. Seaborn, supra,* other factors should be considered in determining whether a spouse has a present vested interest in community property. We stated that:

In reviewing the statutes of the eight American community property States, we are aware of the presence or lack of presence of rules that—

(1) Make the community property liable for the managing spouse's separate torts;

(2) Prevent the nonmanaging spouse from obligating by contract the community property;

(3) Require, except in extraordinary circumstances, equal division of the community property upon its partition at divorce;

(4) Allow the managing spouse to discharge his separate debts from community; and

(5) Require the managing spouse to make an accounting of all community property, including wages, when partitioned at the time of divorce.

No one factor is determinative of the issue at hand. *Westerdahl v. Commissioner, supra* at 94.

Petitioners go to great lengths on brief to compare the features of the zugewinngemeinschaft regime to the laws of the American community property States as well as Sweden. After comparing management of income, liability of property for torts, right to obligate the property by contract, payment of separate debts, and right to an accounting from the managing spouse, petitioners conclude that "while Germany sometimes differs from some of the approved states, it does so only on matters with respect to which the approved states differ among themselves." (Petitioner's brief at 17).

Without going into great detail, suffice it to say that in terms of restrictions on management, liability of the prop-

erty for debts and torts of each spouse, as well as division of the property upon inter vivos termination of the marital regime, we find the German zugewinngemeinschaft regime to be similar in many respects to both Swedish law and the laws of the American community property States. We find, however, that one of the two factors for a present vested interest specifically required by the Supreme Court is clearly missing here: the testamentary disposition or automatic passage of a decedent-spouse's share of the community property (or, in this case, equalization claim) to his or her heirs.

Under zugewinngemeinschaft, a spouse is not assured the passage of the equalization claim to his or her issue. Under BGB 1378(3), the equalization claim is not transferable nor subject to inheritance prior to the termination of the matrimonial regime. The spouse with the smaller zugewinn thus must survive in order to receive the equalization. The spouse may therefore be easily deprived of his or her half of the accrued gains, a concept which goes against any notion of a "presently vested interest" in addition to failing one of the two broad requirements found so essential by the Supreme Court in *Poe v. Seaborn, supra.* We find that without the assurance of passage of the equalization claim to each spouse's heirs, it is impossible to hold that a present vested interest exists.[10]

By the spouses' inability to transfer or oblige their equalization claims it is also clear that those claims are merely expected future interests and not present vested interests. A mere "expectancy" in a spouse's income does not qualify for community property benefits under the tax laws. *Westerdahl v. Commissioner, supra* at 90. Again, this conclusion is supported by BGB sec. 1378, which provides that the claim for equalization does not arise until termination of the marriage.

---

[10]Petitioners point out that the laws of both Nevada and New Mexico did not permit a wife to testamentarily dispose of her half of the couple's community property prior to changes in those States' laws in 1959 and 1975, respectively. Both jurisdictions had already been labeled "approved" community property States by the Internal Revenue Service in 1930, following the Supreme Court decision in *Poe v. Seaborn*, 282 U.S. 101 (1930), and its companion cases. Mim. 3853, X-1 C.B. 139 (1931). The fact that an administrative ruling was made with regard to those States which appears to have been less restrictive than the Supreme Court's test in *Seaborn*, and which thus conferred a tax benefit that may not have been warranted at the time, does not change our result in this case.

Moreover, it seems clear that the intent of the German statutory scheme was not to create a community property regime under zugewinngemeinschaft. We do not dispute petitioners' statement, made over and over again on brief, that local labels do not determine Federal tax law consequences. See *Morgan v. Commissioner*, 309 U.S. 78, 81 (1940); *United States v. Davis*, 370 U.S. 65, 70 (1962). However, even petitioners concede that Federal courts must look to local law to determine what rights in property are held by the parties. *Warburton v. White*, 176 U.S. 484, 496 (1900). Therefore, while we do not find it to be determinative that Germany labels one regime "community property" (gütergemeinschaft) and another "community of accrued gains" (zugewinngemeinschaft), we cannot ignore the fact that the BGB expressly states that the spouses do not own their property jointly (BGB sec. 1363). Nor can we ignore the fact that were petitioners earning this income in Germany, and elected to file separate income tax returns, each could report only his or her own wages and not his or her spouse's wages as income. Sec. 26, Einkommensteuergesetz (German Income Tax Act).

The legislative history of the BGB sections providing for zugewinngemeinschaft is also consistent with this view, as are German legal commentators. The legislative history states that neither spouse has a share in the other's property while the matrimonial regime exists, and each spouse's property does not become community property.[11] Dr. Müller-Freinfels, in his learned treatise on German family law, also states that no real "community" exists, and no spouse has an in rem right in the other spouse's goods. Equalization is purely a monetary claim upon the dissolution of the marriage. W. Müller-Freinfels, "Family Law and the Law of Succession in Germany," 16 Intl. & Comp. L. Q. 409, 426-427 (1967). Lastly, Dr. Peter Schlechtriem, petitioners' expert and a family law professor in Germany, coauthored a commentary on this section of the BGB when the law was adopted, in which he states that

---

[11]Special Committee of the German Federal Parliament, Drucksache 3409, Schriftlicher Bericht des Ausschusses fümur Rechtswesen und Verfassung, Seite 5.

each spouse alone remains the owner of the property he or she acquired prior to or during the marriage. Iauernig, Schlechtriem & Sturner, Commentary on the BGB at 1245 (3d ed. 1984).

Finally, our holding today is consistent with our language in *Hall v. Commissioner*, T.C. Memo. 1978-360. In that case, a U.S. citizen residing in Germany with a French wife claimed that his income was community property. His argument, however, was that he was subject to the laws of either France or California, community property jurisdictions in which he had resided in the past, or of Andorra, where he resided following the years at issue. We held that he was domiciled in Germany during the years in issue, and that his income was not subject to the laws of a community property regime, stating:

> The German Civil Code, Sixth Title, section 1363 provides that a "community of accrued gains" is the prevailing matrimonial regime where the spouses do not provide otherwise by marriage contract. However, the term may be misleading, for the system is not one of community property. Rather, German law provides for a system of separate property during the existence of the marriage, with a claim for equalization of gains upon termination of the matrimonial regime. J. Leyser, " 'Equality of the Spouses' under the New German Law," 7 Am. J. Comp. L. 276, 279-280 (1968); W. Müller-Freinfels, "Family Law and the Law of Succession in Germany," 16 Intl. & Comp. L. Q. 409, 426 (1967); compare *Poe v. Seaborn*, 282 U.S. 101 (1930). [*Hall v. Commissioner, supra* (37 T.C.M. 1500, 1503, 47 P-H Memo T.C. par. 78,360, at 78-1491)].

While we are not bound by this language in *Hall*,[12] we agree with the conclusion reached in that opinion as to the interests of spouses in each other's property under zugewinngemeinschaft, and we reach the same conclusion in these cases. The zugewinngemeinschaft does not provide for a community of property and each spouse does not have a present vested interest in the other spouse's property.

---

[12]Our discussion of this issue in *Hall v. Commissioner*, T.C. Memo. 1978-360, might be considered dicta. While the taxpayer in that case claimed on his returns that he was entitled to split income with his wife under the community property laws of Germany, he apparently abandoned that claim at trial; as stated above, he argued that he was subject to the laws of either California, France, or Andorra. Moreover, although we found that the taxpayer was domiciled in Germany, we held that Germany would look to the laws of the United States in that case (because the taxpayer was a U.S. citizen at time of marriage) to determine if the taxpayer's income was community property.

Therefore, petitioner-husbands are taxable on the full amount of their earnings while in the United States.

*Decisions will be entered under Rule 155.*